# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

LIBERTY MUTUAL
INSURANCE COMPANY,

       *Plaintiff,*

v.                           **Case No. 4:16cv658-MW/CAS**

COMMERCIAL CONCRETE
SYSTEMS, LLC, ET AL.,

       *Defendants.*

_____/

### ORDER DENYING MOTION FOR DISQUALIFICATION

David Copperfield is a world-renowned magician. He has traveled the globe levitating over live audiences, cutting his body in half, making the Statue of Liberty vanish, "erasing" his assistant's limbs, and even walking through—not over—the Great Wall of China. Many leave his performances believing that magic is, in fact, real. But at the end of the day, he is only an illusionist and his tricks are nothing but smoke and mirrors.

Apparently, Defendants also aspire to be magicians. Their grand finale? Attempting to make a new judge appear in my place out of thin air. Unfortunately for them, law isn't magic; there must be a legal basis for my recusal. And, like David

Copperfield's tricks, their motion is nothing but smoke and mirrors.

Because Defendant's Motion for Disqualification, ECF No. 65, is both factually and legally untenable, it is **DENIED**.

## I

Some background is helpful. I had the pleasure of clerking for three different judges after I graduated from law school: Judge Emmett Ripley Cox of the United States Court of Appeals for the Eleventh Circuit, Justice Stephen H. Grimes of the Florida Supreme Court, and my now-colleague Judge Robert L. Hinkle of the United States District Court for the Northern District of Florida. After my second clerkship ended, I accepted an offer to join Cummings, Lawrence & Vezina, P.A. as an associate in mid-1996. Around that same time, then-attorney Hinkle was nominated by President Clinton to serve on the federal bench, and less than two months later he received his commission.[1] I then accepted an offer to clerk for Judge Hinkle as

---

[1] Oh how times have changed. *See Congressional Research Service, Barry McMillion, Length of Time from Nomination to Confirmation for "Uncontroversial" U.S. Circuit and District Court Nominees: Detailed Analysis* p. 11 (Sept. 18, 2012) (showing that 98.1% of President Obama's uncontroversial district court nominees waited 100 days or longer until confirmation, while only 47.6% of President Clinton's uncontroversial district court nominees waited that same length of time).

his first law clerk, which required me to leave Cummings, Lawrence & Vezina after a couple short months. I never again worked for Cummings, Lawrence & Vezina or any "related" firm;[2] namely, as relevant here, Vezina, Lawrence & Piscitelli, P.A.

During my three clerkships, I had the unique experience of seeing first-hand how the judges that I clerked for ran their chambers. And I strive to run my chambers how they ran their chambers. They were, and are, good judges, and I aspire to be the same. Although each judge had their own idiosyncrasies—and I certainly have my own—many conducted the day-to-day tasks, including the administrative duties, in a similar fashion. Attorneys could contact the courthouse—either a judicial assistant in chambers or a courtroom deputy in the clerk's office—to inquire regarding scheduling or other administrative issues. That was, and still is, entirely unremarkable. *See Code of Conduct for United States Judges* Canon 3(A)(4)(b) (permitting certain "ex parte communication for scheduling, administrative, or emergency purposes" if those communications don't "address

---

[2] Contrary to Defendants' assertion, Vezina, Lawrence & Piscitelli is not and has never been "related" to Cummings, Lawrence & Vezina. Although some of the attorneys left Cummings, Lawrence & Vezina to create Vezina, Lawrence & Piscitelli, they are unrelated entities.

substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication").

My clerkships sparked judicial ambitions of my own, and I eventually decided to run for Florida Circuit Judge in the 2008 General Election. After I announced my intent to run in late 2006, campaign contributions started flowing in. I amassed $113,915.74 in campaign contributions. ECF No. 65-4, at 4. Approximately sixty-eight different law firms and 126 individual attorneys contributed to my campaign. *See* ECF No. 65-4. One of those contributions was from W. Robert "Rob" Vezina, III, who contributed $100 in January of 2007. *Id.* at 1. My hard-fought campaign (read: unopposed) was successful, and I took the bench on January 6, 2009. Three years later, President Obama nominated me to serve as a judge on this Court. The senate eventually confirmed my nomination, and I have been an active federal district judge since December 7, 2012.

My docket is currently one of the busiest in the country. Half of this district's seats are vacant and, as a result, I preside over hundreds and hundreds of cases in three different cities. My weighted caseload is almost 1,100 – considering two active judges

4

are handling the caseload of four active judge. Because time is at such a premium, efficiency and diligence become all-important. Thus, as I am permitted to do so, I allow attorneys to contact my judicial assistant and my courtroom deputy to raise non-substantive administrative issues. My staff deserves all the credit for keeping my chambers running as smoothly as it does. Without them, everything would come to a screeching halt.

Twice in this case attorneys contacted my judicial assistant with non-substantive administrative issues. The first contact involved an erroneous order dismissing this case. Counsel in another matter contacted my courtroom deputy and informed her that a settlement had been reached, as is required under Local Rule 16.2. *See* N.D. Fla. Loc. R. 16.2(A)(1) ("Each attorney of record must ensure that the Court is notified immediately when . . . [a] civil case is settled."). My courtroom deputy asked for the case number, but this case's number was accidentally provided. Thus, thinking that this case had been settled, I entered an order dismissing the case and directed the Clerk to enter judgment. ECF No. 32 (dismissal); ECF No. 33 (judgment). Confused, counsel for Plaintiff—Ms. Megan Reynolds—called my judicial assistant and told her that the dismissal must have been entered

in error, as the parties had not settled the case. My judicial

assistant indicated that the order may have been intended for

another case and that she would make sure this issue was

addressed expeditiously. Immediately after that call, Ms.

Reynolds contacted Defendants' counsel to explain the error and

her communication with chambers. ECF No. 65-1, at 1. An order

withdrawing the dismissal was posted later that day. ECF No.

34.

The second contact involved scheduling issues surrounding

a discovery matter. On March 10, 2017, non-party Amerisure

Insurance Company moved to quash a subpoena issued by

Plaintiff, ECF No. 53, and a hearing to address that motion was

set for March 14, 2017, ECF No. 54. As she had done before, Ms.

Reynolds contacted my judicial assistant to ask whether the

parties could appear telephonically. My judicial assistant

informed her that the parties needed to appear in-person. After

some thought, I changed my mind when I learned the lawyers

were from out of town and directed my judicial assistant to email

Ms. Reynolds and let her know that the hearing was being

converted from an in-person hearing to a telephonic one. ECF No.

65-2, at 6. Plaintiff's counsel then forwarded that email to counsel

for Defendant and Amerisure, ECF No. 65-2, at 5, and a notice converting the hearing was posted shortly thereafter. ECF No. 61.

Defendants filed a motion to disqualify me from this case given my brief tenure at Cummings, Lawrence & Vezina, Mr. Vezina's contribution from ten years ago, and Ms. Reynolds's ex parte communications with my judicial assistant. ECF No. 65. They argue that my "impartiality might reasonably be questioned" and that "an objective, disinterested, lay observer fully informed of the facts . . . would entertain a significant doubt about [my] impartiality." *Id.* at 4.

## II

Motions to disqualify are one of the thornier issues that judges face. They must therefore be handled delicately. Indeed, the issues raised by motions to disqualify are acutely unique. The run-of-the-mill motion, for example, does not require the judge to engage in self-analysis of their own possible biases. But with motions to disqualify, the judge is judging himself. That requires self-awareness, modesty, and personal integrity.

If a judge harbors doubt "concerning whether his [or her] disqualification is required he [or she] should resolve the doubt in

favor of disqualification." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988) (citations omitted). Disqualification, however, "cannot be based on 'unsupported, irrational, or highly tenuous speculation.'" *United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) (quoting *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)). Rather, it "must be supported by some factual basis . . . ." *Id.* The judge must also remain vigilant to "the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (citations omitted).

Defendants raise two separate grounds for disqualification: § 28 U.S.C. 455(a) and § 28 U.S.C. § 455(b)(1). Disqualification is required under § 455(a) when a judge's "impartiality might be reasonably questioned." That standard is met when "'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" *United States v. Kelly*, 888 F.2d 732, 744–45 (11th Cir. 1989) (quoting *United States v. Torkington*, 874 F.2d 1441, 1446 (11th

8

Cir. 1989)). And in making this decision, the judge should adopt the perspective of a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)). Disqualification under § 455(a) may be waived, however, if the judge fully discloses the basis for any disqualification on the record. *See Parker*, 855 F.2d at 1527.

Unlike the objective standard of § 455(a), § 455(b) delineates specific instances where bias is actual or assumed. *Liteky v. United States*, 510 U.S. 540, 567 (1994). Among other reasons, a judge must disqualify themselves "[w]here he [or she] has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(b)(1). That bias or prejudice must be "'personal and extrajudicial.'" *Adamson v. United States*, 288 F. App'x 591, 593 (11th Cir. 2008) (quoting *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007)). In other words, "it must derive from something other than that which the judge learned by participating in the case." *McWhorter v. City of Birmingham*, 906

9

F.2d 674, 678 (11th Cir. 1990) (citing *Jaffe v. Grant*, 793 F.2d 1182, 1188–89 (11th Cir. 1986)).

### III

Defendants raise three alleged grounds for my recusal: (1) I worked for Cummings, Lawrence & Vezina—which they dub as Vezina, Lawrence & Piscitelli's predecessor firm—for a couple months over twenty years ago; (2) Mr. Vezina, who is one of Plaintiff's attorneys, made a $100 contribution to my unopposed judicial campaign ten years ago; and (3) Plaintiff's counsel had ex parte communications with my judicial assistant to address purely administrative matters. The motion is frivolous and wholly without merit. This is not a close call.

First, Defendants state that it "cannot be ignored" that I was an associate at the Vezina law firm.[3] ECF No. 65, at 6. This simply is just not a basis for my recusal, as I do not have a personal bias in favor or against Plaintiff's counsel, nor would a well-informed, objective observer believe that I do. I have not been affiliated with the Vezina law firm since my brief tenure

---

[3] I call it this for simplicity, but the firms are not the same. Cummings, Lawrence & Vezina dissolved, and some of its attorneys formed Vezina, Lawrence & Piscitelli. That does not make the firms one in the same.

over twenty years ago. Reasonable well-informed observers understand that judges were previously practicing attorneys and that they may have worked for various law firms during their career. They would not conclude, based on my months-long tenure with the Vezina law firm over two decades ago, that I cannot be fair and impartial to the parties that are now before me. Circuit precedent recognizes that conclusion; in fact, judges in this circuit have declined to recuse themselves in even more compelling circumstances. *See Draper v. Reynolds*, 369 F.3d 1270, 1281, 1281 n.18 (11th Cir. 2004) (holding that judge's former affiliation with law firm representing a party did not warrant disqualification, and noting that a two year recusal period is generally reasonable where the judge is no longer receiving financial payment from a former law firm); *Huff v. Standard Life Ins. Co.*, 683 F.2d 1363, 1369–70 (11th Cir. 1982) (holding that judge's former affiliation with law firm representing a party did not warrant recusal). And if a judge need not recuse himself when his own child is an associate at a firm representing one of the parties, *see U.S. ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d

456, 463–64 (5th Cir. 1977),[4] I certainly need not recuse myself here.

Other examples bolster this conclusion. Take Chief Justice Roberts. Before taking the bench, Chief Justice Roberts was a partner at Hogan Lovells's predecessor firm, Hogan & Hartson. Accepting Defendants' argument here as true, Chief Justice Roberts would have to recuse himself (or disclose the factual basis for recusal) in every case where Hogan Lovells represents one of the parties. But he does not. *See, e.g.*, *Kansas v. Carr*, 136 S. Ct. 633 (2016).

Defendants assert that this case is different because two attorneys at the Vezina law firm are also witnesses in this case. That argument is nonsensical and, unsurprisingly, Defendants have pointed to no authority establishing that I should recuse myself on that basis. In any event, facts matter. The attorneys that Defendants reference—Ms. Reynolds and Mr. Friedman— were not associated with Cummings, Lawrence & Vezina during my brief, long-ago tenure with that firm. For good reason; they

---

[4] Decisions of the Fifth Circuit prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)

12

hadn't even started law school yet. To suggest that I am biased or that a reasonable, well-informed observer would question my impartiality on that basis is just silly.

Second, Defendants argue that I should recuse myself because Mr. Vezina, who is one of Plaintiff's attorneys, made a $100 contribution to my unopposed judicial campaign ten years ago. Nonsense. Case law is not always clear, but it is here. I need not recuse myself or disclose any basis for recusal due to Mr. Vezina's $100 campaign contribution from a decade ago.

"Not every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal . . . ." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884 (2009) (citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971)). Rather, recusal is only necessary in the rare scenario where "a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Id.* In making that determination, courts focus "on the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the

13

election, and the apparent effect such contribution had on the outcome of the election." *Id.*

This is not a case like *Caperton*, where the defendant's CEO contributed $3 million to the judge's campaign—an amount that totaled "$1 million more than [that] spent by the campaign committees of both candidates combined." *Id.* at 885. It is particularly notable that I did not run for judicial office in, say, Mississippi, where someone could have donated a million dollars to my campaign. Rather, when I ran for office, Florida capped judicial-election contributions at $500.[5] § 106.08(1)(a), Fla. Stat. (2008). Given those intense restrictions, Florida courts have held that "[a]n attorney's legal campaign contributions within the statutorily permitted amount are not a legally sufficient ground for disqualification." *E.E. DuPont De Nemours and Co., Inc. v. Aquamar S.A.*, 24 So.3d 585, 585 (Fla. 4th DCA 2009) (citing *MacKenzie v. Super Kids Bargain Store, Inc.*, 565 So.2d 1332 (Fla. 1990)). Thus, Mr. Vezina's $100 contribution, which was

---

[5] That amount has since been raised to $1,000 for trial court judges. § 106.08(1)(a)2, Fla. Stat. (2016).

well below that cap, is not cause for recusal. That alone should foil Defendants' argument.

Nonetheless, *Caperton* suggests that the inquiry is necessarily a fact-based one. Some of those cases, of course, are harder than others. One of those harder cases is *Robinson Nursing and Rehabilitation Center, LLC v. Phillips*, 502 S.W.3d 519 (Ark. 2016). There, one of the parties had previously contributed $20,000 to an Arkansas Supreme Court justice's campaign. *Id.* at 521. That amount represented approximately 15% of the justice's $154,900 in total financial contributions. *Id.* But the justice refused to grant the motion to disqualify. *Id.* at 523. That was because the contribution was "insufficient to warrant disqualification in an unopposed race" and the three-year delay from the contribution to the case reaching her court "heavily weigh[ed] against recusal." *Id.* at 522–23 (citing *Caperton*, 556 U.S. at 886). Other judges have done the same in similar circumstances. *See Ivey v. Dist. Ct.*, 299 P.3d 354, 359 (Nev. 2013) (finding no disqualification where trial judge received $5,000 in campaign contributions from one of the parties and

$5,000 from that party's attorney, which amounted to 14% of his total contributions).

But this case is about as easy as it gets. My judicial campaign raised $113,915.74. Approximately 126 individual attorneys and sixty-eight law firms made contributions. Mr. Vezina's $100 contribution amounted to less than .1% of that total.  There is more. The Vezina law firm could have made a $500 contribution. It did not. Other members of that firm could have made a $500 contribution. They did not. Moreover, even if they had, the ten-year gap from the contribution to now negates any doubt regarding my ability to adjudicate this case impartially. *See Caperton*, 556 U.S. at 886 ("The temporal relationship between the campaign contributions, the [judge]'s election, and the pendency of the case is also critical."). Finally, the frivolity of Defendants' allegations is even more apparent given that I no longer hold elected office. *See Hiles v. Army Review Bd. Agency*, No. 1:12-cv-673, 2015 WL 4778831, at *5 (S.D. Ohio Aug. 13, 2015) (accepting that allegations of judicial

16

bias are "'particularly tenuous'" if the judge "no longer holds

elected office" (citation omitted)).

Defendants' argument, if true, would effectively cripple our

judicial system. Many states around the country—including

Florida—hold judicial elections. In those states, judicial

campaigns "are necessary components of [the] judicial system."

*MacKenzie*, 565 So.2d at 1335. Indeed, "'leading members of the

state bar play important and active roles in guiding the public's

selection of qualified jurists.'" *Id.* (quoting *Ainsworth v. Combined

Ins. Co. of Am.*, 774 P.2d 1003, 1020 (Nev. 1989)). Requiring a

judge to recuse himself from all cases where an attorney

contributed to his campaign would therefore be, at best,

counterintuitive. *See Williams–Yulee v. Fla. Bar*, 135 S. Ct. 1656,

1671 (2015) ("A rule requiring judges to recuse themselves from

every case in which a lawyer or litigant made a campaign

contribution would disable many jurisdictions."). At worst, it

would "create a perverse incentive for litigants to make campaign

contributions to judges solely as a means to trigger their later

recusal . . . ." *Id.* And I will neither incentivize nor facilitate that kind of forum shopping.

Finally, Defendants contend that I should disqualify myself given the "seemingly familiar and unusual informal communications" Plaintiff's counsel had with my judicial assistant. ECF No. 65, at 6. Nonsense. Those communications were not unusual; they happen quite frequently and are explicitly authorized by the Code of Conduct for United States Judges. To suggest otherwise is pure bunk.

To be completely honest, I am not sure whether Defendants' counsel did not adequately research the case law on this subject, or simply didn't digest it. But the law on this topic is not rocket science. Some ex parte communications with counsel are forbidden. *See State v. Marks*, 758 So.2d 1131, 1134 (Fla. 4th DCA 2000) (agreeing that an ex parte communication was impermissible when "there was no plausible basis for [the judge] to have believed that he was authorized to have conferences with the prosecutors and investigators involving the substance of the

case"). Others—including those for scheduling, administrative, or emergency purposes—are not.[6]

*Eleanora J. Dietlein Trust v. American Home Mortgage Investment Corp.*, No. 3:11-cv-0719, 2014 WL 911121 (D. Nev. Mar. 7, 2014), is instructive. In that case, counsel for an interested party attempted to contact the district judge's judicial assistant to ask about the case's status. *Id.* at *1. Because the district judge's staff had already left for the day, the district judge answered the phone. *Id.* The district judge reviewed the docket sheet, and informed counsel that the case had settled yet the parties had not submitted a stipulation dismissing the case yet. *Id.* Plaintiff's counsel later moved for the judge to recuse himself, yet the district judge declined to do so because counsel's

---

[6] *See Code of Conduct for United States Judges* Canon 3(A)(4)(b) (allowing ex parte communications for "scheduling, administrative, or emergency purposes" as long as the communication "does not address substantive matters and the judge reasonably believes that no party will gain a procedural substantive, or tactical advantage as a result of the ex parte communication"); *see also Law Offices of David Efron v. Matthews & Fullmer Law Firm*, 782 F.3d 46, 55 (1st Cir. 2015) (allowing "ex parte communications 'for scheduling, administrative, or emergency purposes'" (quoting *Code of Conduct for United States Judges* Canon 3(A)(4)(b)); *BB Online UK Ltd. v. 101domain, Inc.*, No. 14-cv-885, 2014 WL 6980566, at *3 (S.D. Ca. Dec. 9, 2014) ("Contacting the Court for non-substantive scheduling purposes, as defendant did here, does not constitute improper *ex parte* communication."); *Nudel v. Flagstar Bank, FSB*, 52 So.3d 692, 694–95 (Fla. 4th DCA 2010) ("*Ex parte* communications regarding purely administrative, non-substantive matters, such as scheduling, do not require disqualification." (citing *Rose v. State*, 601 So.2d 1181, 1183 (Fla. 1992))).

"phone call was purely for administrative purposes, and there was no substantive discussion about the case at all." *Id*. at *2.

Here too, both ex parte communications at issue were innocuous and would not lead a well-informed, objective observer to question my impartiality. Ms. Reynolds's communication with my judicial assistant regarding the order of dismissal, for example, was for emergency purposes and did not address any substantive issues. Imagine her shock when she received the electronic case notification that her case had been dismissed. Her telephone call was welcomed; it helped my chambers quickly identify our administrative error and correct it in a timely fashion.

Ms. Reynolds's communication with my judicial assistant regarding the discovery hearing is equally unobjectionable, as it was for scheduling purposes and did not address any substantive issues. Quite frankly, I am astounded at Defendants' suggestion that there is something questionable about my setting and handling discovery matters on an expedited basis. *See* ECF No. 65, at 3 (questioning "the expeditious manner in which the hearing was set"). Half of this district's judicial seats are vacant. I am juggling three dockets. I set the discovery matter at issue

here on an expedited basis so that it did not fall through the cracks. That was entirely consistent with my standard practice, and an audit of my docket activity would show just that. Moreover, there is nothing unusual about the fact that I am handling a discovery dispute. Neither Judge Hinkle nor I refer discovery disputes to the magistrate judges; rather, we handle discovery motions ourselves on an expedited basis.

Only one reasonable conclusion can be drawn here. I do not have a personal bias in favor or against Plaintiff's counsel, nor would a well-informed, objective observer believe that I do.[7] Defendants' shenanigans are nothing but rank forum shopping. I am just as much obliged not to recuse myself when it isn't called for as I am obliged to do so when it is. *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (1st Cir. 1988) (citing *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir. 1961)).

Thus, Defendants' motion—which relies on speculation, innuendo, and erroneous information—has absolutely no merit

---

[7] Because the case law makes plain that recusal is not required in this situation, Defendants' argument for record disclosure is nothing but a red herring. "Record disclosure under § 455(a) is for the purpose of letting the parties decide whether to give record waiver." *In re Trafford Distrib. Ctr., Inc.*, 435 B.R. 745, 751 (Bankr. S.D. Fla. 2010). But the parties have nothing to waive here; there is no basis for recusal in the first place.

and is due to be denied. *Hinman v. Rogers*, 831 F.2d 937, 939
(10th Cir. 1987) ("However, conclusions, rumors, beliefs, and
opinions are not sufficient to form a basis for disqualification."
(citing *Berger v. United States*, 255 U.S. 22, 34 (1921))).

IV

In this age of shrinking federal budgets, congressional
gridlock, and unfilled judicial seats, judges and their staff are
notoriously overworked. Luckily, most attorneys are wise enough
not to file nonsense motions. For those that aren't, the threat of
sanctions under 28 U.S.C. § 1927 is usually enough of a
deterrent.

Defendants' motion shows that isn't always the case. It has
no basis in law or fact. In fact, Defendants' "'ostrich-like tactic of
pretending that potentially dispositive authority against [their]
contention does not exist is as unprofessional as it is pointless.'"
*Mannheim Video, Inc. v. County of Cook*, 884 F.2d 1043, 1047
(7th Cir. 1989) (quoting *Hill v. Norfolk and Western Ry.*, 814 F.2d
1192, 1198 (7th Cir. 1986)). Perhaps they should think twice
before filing such a baseless motion. They risk being sanctioned if
they don't.

And, before Defendants file a motion for reconsideration

arguing that it is odd that I issued this order on a weekend, I should note there is nothing unusual about issuing an order on a weekend. I work almost every weekend. This is the fifth order I issued today. The only thing that's unusual is that I have a courtroom deputy that is so dedicated that she routinely pulls and posts orders for me every weekend.

Accordingly,

**IT IS ORDERED:**

Defendants' Motion for Disqualification, ECF No. 65, is **DENIED**.

**SO ORDERED on April 1, 2017.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**